(79 Misc. Rep. 167.)

### In re BURDICK et al.

(Surrogate's Court, Albany County. January, 1913.)

1. PARTNERSHIP (§ 62*)—DISSOLUTION—EVIDENCE.

In the settlement of the estate of a deceased person, evidence *held* to show that a partnership of which deceased had been a member and which had made a note had not been dissolved, so that his share of the indebtedness could not be collected from his estate until the partnership assets had been exhausted.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 86; Dec. Dig. § 62.*]

2. PARTNERSHIP (§ 249*)—PAYMENT OF DEBT BY SURVIVOR—SUBROGATION.

A surviving partner personally paying a firm debt is, at most, only entitled to be subrogated to the rights of the creditor as to any part chargeable against deceased.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 564–576, 578–598; Dec. Dig. § 249.*]

3. PARTNERSHIP (§ 258*)—DECEASED PARTNER—JOINT DEBTS—REMEDY.

A creditor of a partnership cannot enforce against the estate of a deceased partner the equitable liability of the estate until it is shown that he has no legal remedy against the surviving partner.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 524–528; Dec. Dig. § 258.*]

4. EXECUTORS AND ADMINISTRATORS (§ 295*)—"CLAIM" AGAINST EXECUTOR—ASSETS.

Where the estate of a deceased holds a note of the executor, the fact that the debt has not yet become due does not give him the right to enjoy a legacy, and still retain such part of the estate, such claim being within the contemplation of Code Civ. Proc. § 2714, providing that claims

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

against an executor are assets of the estate which must be included in the inventory, and distributed in payment of debts and legacies.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1185–1197; Dec. Dig. § 295.*

For other definitions, see Words and Phrases, vol. 2, pp. 1202–1211; vol. 8, p. 7604.]

Accounting of Bainbridge W. Burdick and others, executors of Norman Burdick, deceased, and Ethel B. Wygant and others file objections. Decree entered.

See, also, 143 App. Div. 972, 127 N. Y. Supp. 1114.

H. & W. A. Hendrickson, of Albany, for executor B. W. Burdick.

A. Page Smith, of Albany, for Ethel Wygant, executrix and contestant.

Beecher S. Clother, of Glens Falls, for certain legatees.

J. E. Sennett, of Glens Falls (Daniel J. Dugan, of Albany, of counsel), for certain legatees.

VAN DERZEE, S. Bainbridge W. Burdick, Ethel B. Wygant, and Emma E. Clark, the three persons named executors of the last will and testament of Norman Burdick, deceased, filed an account of their proceedings in this court, verified by all of them. Thereafter, one of the executors, Ethel B. Wygant, asked leave to file objections to the account, alleging she had signed the same under protest and against her will, to avoid trouble with her brother, Bainbridge W. Burdick, who threatened to impose financial loss upon her if she refused to accede to his wishes and management of the business of the estate. Permission to contest the account was granted to Mrs. Wygant, and she has filed objections raising for our determination issues of considerable importance. Other legatees have also appeared herein by attorney and filed objections to the account.

The contest is almost entirely between Bainbridge W. Burdick and his sister, Ethel B. Wygant. Mr. Burdick has had practically sole charge in the management of the business of the estate, retained the attorneys to act, attended to the making of the inventory, and prepared the account without any considerable, if any, suggestion from his co-executors. The situation then before us is really an accounting by Bainbridge W. Burdick, with objections thereto by his sister, Mrs. Wygant.

There appears in the schedule of claims allowed, but not paid by the executors, the following:

"First National Bank of Albany, note dated March 31, 1908, for the sum of $50,000, made by Burdick & Son (the partnership) one-half of which is chargeable to said estate, $25,000. Interest to February 1, 1910, $250. Interest to be added to date of payment."

Mrs. Wygant objected to payment by the executor of any part of this note out of estate funds, for the reason that it was not a proper claim against the estate, and could not be considered as a claim at this time.

The First National Bank appeared by attorneys. After objections were filed, the bank's attorneys announced they would ask no consider-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ation of their claim by this court, that the note was a partnership obligation, and they had other and sufficient remedies for collecting the amount due thereon. Thereafter Bainbridge W. Burdick paid the amount due on the note to the bank and presented a claim for $25,000 and some interest on account thereof.

[1] Mrs. Wygant objected to payment of this claim upon the ground principally that the note was an obligation of the firm of Burdick & Son, the partnership, and there was no liability on the part of the deceased member's estate until legal remedies had been exhausted against the partnership assets or the surviving partner. The indebtedness represented in part by this note had existed for several years prior to the death of the decedent, and this particular note was the last of several renewals for a portion of the same indebtedness. Money was borrowed from the First National Bank in 1904 and 1905 to repair and improve real property owned by Bainbridge W. Burdick and Norman Burdick and used by them in conducting a business as copartners under the name of Burdick & Son. In 1905 a corporation was formed under the name of Burdick & Son, Inc., to conduct the same business upon the same premises in which the copartners had theretofore been engaged. At that time the machinery and some, but not all, of the assets of the copartnership, were transferred to the corporation. Bainbridge W. Burdick declares the partnership was dissolved in 1905, at the time the corporation was formed, and was not in existence thereafter; that this note is in fact a joint obligation of the decedent and himself, upon which each was at the time of the death of Norman Burdick liable for an equal share.

I do not think the testimony before me supports the claims of the executor, nor do the probabilities indicate such purpose. Whatever may have been the arrangements between the members of this copartnership in relation to other matters at the time the corporation was formed, it is clear to me that it was the purpose and understanding of the partners to continue the partnership agreements in respect to the indebtedness represented by this $50,000 note, and also in respect to other matters. Mr. Burdick in giving his version of the situation admitted having performed several transactions indicating the life of the partnership after he claimed it had been dissolved. He was asked if his act in making the note on March 31, 1908, and signing the name of Burdick & Son thereto was a copartnership act. His reply was:

"It was not a copartnership act between ourselves, but would probably be understood or accepted as such by the bank."

The bank certainly considered the note a partnership obligation and treated the proceeds thereof as partnership assets. It seems to have been the purpose of Mr. Burdick on the 31st of March, 1908, to give the bank to understand it was a partnership obligation. It was made in form of signature exactly like previous notes and checks of the firm had been made on many occasions and by the same person. Mr. Burdick testified this note was given "to replace a partnership note the same as the original note.".

In schedule D of the account, where mention is made of the note,

it is described as a partnership indebtedness. If there had been any intention on the part of the decedent in his lifetime to change the character of his liability upon this note, it would have appeared upon its face. The amount is large. The transaction was among men trained in business methods and of presumed technical ability. If it had been the intention of the bank authorities and the Burdicks to have this a note of joint and several individual liability; it would have been executed in such form, and not as it now appears.

There are other evidences of the continuation of the copartnership. Taxes on the factory property were paid in the years 1905, 1906, and 1907 by checks signed Burdick & Son, all after the alleged dissolution of the firm. The conclusion is irresistible that the copartnership was not dissolved in 1905, and, in so far as this note is concerned, existed at the time of the death of the decedent.

[2] The surviving partner, having paid the firm debt which he claims was in part chargeable to the decedent, is, at most, entitled to be subrogated to the rights of the creditor. It does not appear that the remedy at law upon the note has ever been attempted.

[3] The rule is laid down in Pope v. Cole, 55 N. Y. 124, 14 Am. Rep. 198, as follows:

"To enable a creditor to collect his debt in equity from the estate of a deceased joint debtor, he must show that he could not collect it by proceedings at law against the surviving partner. * * * Until it has been demonstrated that there is no legal remedy, a creditor may then avail himself of the equitable liability of the estate of the deceased joint obligor."

The claim of Bainbridge W. Burdick is therefore rejected and disallowed, and his accounts surcharged with the sum of $3,000 interest paid to the bank out of the funds of the estate on said note, together with interest thereon to date.

[4] Among the assets of this estate is a note of Bainbridge W. Burdick, dated January 2, 1907, payable January 2, 1914, for $40,000. During the course of administration Mr. Burdick attempted to convert this note by selling it at public auction. Upon the application of Ethel B. Wygant an order was made enjoining and restraining a sale or other disposition of this note until the further direction of this court. An appeal was taken to the Appellate Division of the Supreme Court, which tribunal affirmed the order of this court.

The fifth clause of the codicil to the will of the decedent is as follows:

"Fifth. I order and direct my executors to call in and collect from my son Bainbridge W. Burdick on account of his promissory note or notes which I hold, sufficient money to promptly pay all the cash bequests made by me in my said will and in this codicil and after paying said bequests from the proceeds of said note, or notes, I give and bequeath the balance of said note or notes and the moneys represented thereby equally to my son Bainbridge W. Burdick and my daughter Ethel Wygant share and share alike."

It does not appear that there were any notes due the decedent from Bainbridge W. Burdick, other than this note of $40,000. There are numerous bequests in the will of money and particular things, such as jewelry, horses, etc., to friends and employés, approximating $19,000. None of these legatees has received his bequest, for the reason, as stated by Mr. Burdick, that he believed the estate insolvent.

Five hundred shares of the capital stock of Burdick & Son, the corporation, were bequeathed to Bainbridge W. Burdick by the will of the testator. Soon after the letters were issued herein these shares of stock were transferred to Bainbridge W. Burdick, and he has received the dividends thereon ever since. The exact value of this stock does not appear, but it is conceded to be large.

The contesting executrix insists that this $40,000 note and the interest due thereon should be treated as cash in his hands as executor, and that a lien should attach to his legacy until the amount of the promissory note has been distributed according to the terms of the will.

Section 2714 of the Code of Civil Procedure, after describing what the inventory of a decedent's estate should contain, proceeds as follows:

"The naming of a person executor in a will does not operate as a discharge or bequest of any just claim which the testator has against him; but it must be included among the credits and effects of the deceased in the inventory, and the executor shall be liable for the same as for so much money in his hands at the time the debt or demand becomes due, and he must apply and distribute the same in the payment of debts and legacies, and among the next of kin as part of the personal property of the deceased."

Counsel for the executor insists this section does not apply, for the reason the debt has not yet become due. Such a construction of this statute is altogether too narrow. To say that an executor who is also a legatee is entitled to the enjoyment of his own legacy while he retains in his hands a part of the estate out of which other legacies are directed to be promptly paid violates conscience and offends ordinary principles of equity.

It is the rule of law that an executor has no right to pay either himself or any other legatee any portion of a legacy until he has first collected the amount of their respective debts to the estate. In such case the executor has a lien and right of detention upon the legacy sufficient to pay the indebtedness to the estate. When the debt is due from the executor to the estate, it is the duty of the court which gives consideration to his accounts to see that it is applied to the legatee who happens to be the accounting party. It is not a mere question of legal offset, but of equitable lien and right of retainer, and the right depends upon the principle that the executor is not entitled to his legacy while he retains a portion of the estate distributable to others.

The executor should have accounted for the amount due of principal and interest on his note as cash in his hands. Having failed to do that, he cannot be allowed to retain the benefits of his own legacy which he has appropriated. The decree to be entered herein should provide and in it Bainbridge W. Burdick should be directed to restore to the estate the certificates of stock of Burdick & Son which were bequeathed to him under the will, together with any and all certificates of stock issued to him as dividends thereon and also all cash dividends declared and paid to him thereon, and that said stock shall not be again transferred until direction is given by this court.

The account must also be surcharged $3,000, one-half rent for the factory property due the decedent on March 31, 1908, which was received by the executor and for which he is not charged in the account,

together with interest thereon from April 1, 1908. The portion of rent due the estate for the month of April and one-half of May, 1908, appears not to have been paid to the executor and doubtless will be accounted for hereafter.

Objections have been filed by several legatees to many items of the account. It was necessary for them to appear and oppose the claims of the executor to protect their interests. The manner in which the executor has attempted to deprive every person who derives an interest in this estate of the benefit which the testator intended they should enjoy made it necessary for the legatees to secure the aid of counsel to protect their interests. Consideration of these objections in detail is now unnecessary because the estate is solvent. The residuary legatee presents no question to the apparently extravagant burial and monument or other items contained in objections filed by the legatees and the interest of the specific legatees will upon the determination already made be fully protected. I deem these parties successful contestants within the provisions of the statute, and will allow to all of them costs in this proceeding. This controversy throughout has been occasioned entirely by the avaricious conduct of the executor in an attempt to get all of this estate he could for his own benefit and to inflict discomfort and annoyance upon his sister, Mrs. Wygant, and to deprive other legatees of their legacies.

The will bequeaths amounts varying, according to service, to employés of the decedent. The executor declared he did not know who these persons were, nor had he made effort to determine. These legatees must be paid, as well as the legatees of particular bequests mentioned in the will.

The horse given to Ralph Mills by the second clause of the codicil was the property of the decedent at the time of his death, and must be delivered to him. This horse is included in the inventory as an asset of the estate and among the expenses of administration set forth in the account are charges for the care and keep of said horse. The harness and wagon mentioned in this bequest do not appear to have been in possession of the decedent at the time of his death.

Costs will be allowed to Ethel B. Wygant, the special guardian and all the parties who have appeared herein, to be taxed on notice and to be paid by Bainbridge W. Burdick personally.

Decreed accordingly.