In the Matter of the Estate of CHAUNCEY C. WOODWORTH, Deceased.

Surrogate's Court, New York County, December 15, 1937.

*Satterlee & Green* [*Jerome R. Hellerstein* of counsel], for the executors, respondents.

*Guggenheimer & Untermyer* [*Eugene Untermyer* and *Abraham Shamos* of counsel], for the petitioner.

*Cravath, deGersdorff, Swaine & Wood,* for the legatees.

*Davis, Polk, Wardwell, Gardiner & Reed,* for the Guaranty Trust Company.

*Ernest B. Millard,* for legatees.

FOLEY, S. The question presented on this application for ancillary letters testamentary is whether or not the amendments made to section 161 of the Surrogate's Court Act by chapter 326 of the Laws of 1936 (in effect September 1, 1936), permit the surrogate in the issuance of letters to disregard the order of priority contained in the section and to decline to appoint the domiciliary representative or his designee. Chauncey C. Woodworth, the decedent, died on July 15, 1937, a resident of the State of Florida, leaving personal property within the jurisdiction of this court. His will named his widow and two children by his first wife as executors. They duly qualified in Florida, the domiciliary State.

Linda V. Woodworth, the former wife of the decedent and a creditor of the estate, under a separation agreement entered into

with the decedent, petitions for the issuance of ancillary letters testamentary to herself or to some disinterested party. She objects to the issuance of letters to the domiciliary executors who have applied by cross-petition for their own appointment. It is the contention of her counsel that under the amended form of section 161, the surrogate in his discretion may select the person to whom letters may issue in disregard of the indicated order of priority. The contention is overruled. The object of the 1936 amendments to the section, as stated in the note printed in the legislative bill was " to re-state in more orderly form the present directions for issuance of ancillary letters." The primary purpose was to overcome the stalemate which resulted under the existing law when the domiciliary representatives were in disagreement among themselves as to the persons who should receive ancillary letters. The amendment as stated in the note would, in such a situation, empower the court " to make a joint appointment or to make a choice among those designated just as is the practice in choosing a domestic administrator from a group of persons having equal right to letters."

In the original form of the section there was a provision that where the will appoints one or more persons as executor or executors, ancillary letters *must* be directed to the person or persons so appointed, or to those who are competent to act and who qualify. The amended form of the section eliminated the word " must " and substituted the word " may." Dependence is placed upon this alteration as showing the legislative intent to empower the surrogate in any case in his discretion to refuse recognition to the domiciliary executor or to the person designated by him.

I find no intent on the part of the Legislature to destroy the order of priority previously existing and the preference accorded to the domiciliary executor or to the person duly nominated by him. (*Baldwin* v. *Rice*, 183 N. Y. 55; *Matter of Cornell*, 267 id. 456, at p. 464; *Matter of Warburg*, 127 Misc. 832; *Matter of Renard*, 157 id. 174.) If the applicant is not otherwise disqualified under the provisions of section 94 of the Surrogate's Court Act, the testator's selection, or the deputization of a person by his executor should not be thwarted by the courts. (*Matter of Flood*, 236 N. Y. 408; *Matter of Leland*, 219 id. 387.) Under the former section it had been held in *Baldwin* v. *Rice* (183 N. Y. 55, at p. 61) that the object of the statutory provision was clear. There the testatrix, Elizabeth B. Rice, was domiciled in Texas. The court stated: " It is fair to assume in the first instance that the testatrix selected a thoroughly competent person, satisfactory to her, to carry out the provisions of the will, and that the Texas probate court on

formal application for letters testamentary found him a proper person. It would be unseemly if the Surrogate's Court of New York county should proceed to appoint an administrator to carry out the provisions of the will of the testatrix other than a person she had selected, unless he renounced his privilege, or negligently refused or failed to act in the premises." This rule is based upon the soundest consideration of public policy and upon the equally important ground of comity and reciprocity between the State of New York and other States and foreign countries. It serves to encourage the appointment by foreign courts of executors selected by testators resident in our own State.

The principles applicable to the issuance of domiciliary letters are equally applicable to the issuance of ancillary letters. (*Matter of Flood, supra; Matter of Leland, supra*.) It is stated in the latter case: " It may be broadly stated that the common law favors the rule that no restriction should be placed upon the choice of an executor, even though unsuitable persons are allowed to exercise the trust to the possible prejudice of creditors and legatees. Modern legislation enlarges the control of probate courts over improper testamentary appointees. In New York the necessary qualifications of an executor are described with minuteness. (Code Civil Procedure, §§ 2564–2567.) But the testator still enjoys the right to determine who is most suitable among those legally qualified to settle his affairs and execute his will, and his solemn selection is not lightly to be disregarded. Appointment is not to be refused merely because the testator's selection does not seem suitable to the judge."

In my opinion the change of the form of the section from mandatory to permissive was intended only to meet a situation where the foreign representatives made conflicting designations or were unable to agree. It would be an abuse of discretion to disregard the preferential right of the foreign executor to qualify as, or nominate an ancillary representative.

The exact question involving the permissive form of the language of the amendment to the section does not appear to have been heretofore passed upon by the courts. However, in a proceeding subsequent to the amendment my colleague, Mr. Surrogate DELE-HANTY, in *Matter of Duncan* (166 Misc. 93), gave recognition to the order of preference set forth in the section. A local trust company designated by the domiciliary representative was held by him to be entitled to ancillary letters.

There is no merit to the contention of Linda V. Woodworth that the domiciliary executors should be denied letters because they have interests adverse to the estate. Standing alone the mere fact

that the executor or administrator has a claim against the estate or is involved in litigation with the beneficiaries has never been a ground of disqualification. This situation exists where the prospective fiduciary has a personal claim against the estate.

The domiciliary executors are, therefore, entitled to have issued to them ancillary letters testamentary upon their duly qualifying. A supplemental citation should issue and be served upon all resident creditors of the estate in accordance with section 162 of the Surrogate's Court Act and an affidavit by a person having knowledge of the facts should be submitted, setting forth the value of the personal property in this State, and the total debts due resident creditors in order to enable the court to fix the amount of the bond as required in section 163 of the Surrogate's Court Act.

Proceed accordingly.