Joseph A. Cox, S.
In this proceeding to settle the account of the executor, objections to the account have been interposed and application has been made to revoke the letters testamentary. The executor is the son of the testatrix and of the objeetant who seeks his removal. The executor is the sole beneficiary under the provisions of the will but the objeetant heretofore asserted his right of election pursuant to section 18 of the Decedent Estate Law and, by reason of such election, is entitled to a one-third portion of the estate.
Shares of a real estate corporation constituted the principal asset of the estate and a bitter controversy arose between the father and son for control of this corporation. Facts developed in a discovery proceeding established that the petitioner had been engaged in a retail merchandising business and the profits or proceeds of that business had been invested in real estate through the corporate device. Shares of stock in the real estate corporation had issued to the objeetant and his wife and it seems beyond doubt that during the lifetime of the testatrix an amicable understanding existed as to their equal ownership of the real estate. It also appeared in the discovery proceeding that, by indorsements of their respective stock certificates in blank, the couple thought they were accomplishing some disposition of these shares on the death of one of them but the holding of this court necessarily was that the shares in the testatrix’ name constituted assets of her estate (33 Misc 2d 981).
Because of friction between the father and the son as to a method of effectuating distribution of the estate assets, this court directed a public sale of the corporate shares held by the estate and at such public sale the father was the successful bidder. The shares so sold had been inventoried by the executor at a value of $75,410.58 and, following the sale of the shares for the sum of $292,000 the executor gave the shares a revaluation of $97,790.69 as of the date of testatrix’ death. The testatrix died on December 3, 1958 and the sale of the shares occurred on May 15, 1961. Conceding the fact that the rivalry between the executor and his father for control of the corporation might have induced a high sales price and forced other bidders to *775 withdraw, there is no evidence that any portion of the large discrepancy between the inventory value and sales price represented an appreciation in the value of the underlying real estate following the death of the testatrix. The assessed valuation of the land and building for the tax year 1958-1959 was $615,000. In the report of the executor’s appraiser, the estimated annual rent roll was computed at $108,546. The executor testified that in November, 1960 he obtained a commitment for a savings bank mortgage in the amount of $525,000 which figure, presumably, was not in excess of two thirds of the property’s value. It appears from the evidence that the inventory value is an undervaluation of the corporate shares and that the date of death valuation fixed by the executor is neither realistic nor justified.
The account of the executor is not a final account for the sole reason that taxes have not been fixed and paid. The shares of the real estate corporation having been sold, distribution to the beneficiaries of the estate will be made in cash and not in kind and each beneficiary will receive a fractional portion of the estate. The inventory valuation of the corporate stock does not enter into the computation of the portions ultimately distributable to the beneficiaries. Were the corporate shares on hand, their valuation would be of consequence in the computation of the executor’s commissions but, because of the liquidation of such shares, commissions will be computed upon the amount realized from their sale. Consequently, the valuation of the corporate shares is of importance only in the estate tax proceedings.
One point of controversy arises because of the tax proceedings and is created by the insistence of the executor that his low valuation of the corporate shares be used for estate tax purposes. The father’s opposition to this valuation arises because, using this valuation, the sale of the shares requires the estate to pay a capital gain tax as well as an estate tax and, while the surviving spouse is entitled to the benefit of a marital deduction in the estate tax allocation, he must bear a share of any capital gain tax. Employing the valuation suggested by the executor, the amount of the combined estate tax and capital gain tax is slightly lower than the amount of the estate tax payable if the corporate shares were to be valued at their actual sales price, with a capital gain eliminated. Under either valuation the testatrix’ husband will bear no share of the estate tax, because of the marital deduction, but using the low valuation, the capital gain tax will require a substantial contribution by him. Using the sales price valuation, a capital gain tax will not be payable and the estate tax will be borne by the executor as beneficiary *776 under the will. Under either method the difference to the Government will be negligible and this court must assume that the taxing authority will use a proper valuation and not arbitrarily adopt an unsound method of evaluating the corporate shares.
This court has no part in the determination of Federal taxes and will not assume the duties of the executor by compelling him to file a tax return in accordance with a determination made by this court (Matter of Bourne, N. Y. L. J., April 13, 1961, p. 12, col 6, affd. 13 A D 2d 741; Matter of Zeitz, 121 N. Y. S. 2d 864). The court is not asked to do precisely this but the request for revocation of the letters testamentary is intended to accomplish this result by indirection through removal of the executor and appointment of an administrator c. t. a. It cannot be said at this time that the executor is acting contrary to the interests of the estate or is acting in disregard of his fiduciary obligation to his father as a person interested in the estate. This is so only because a determination of the tax liabilities of the estate has not been made and the opportunity is available to the executor to amend and complete the tax proceeding. If the executor shall be remiss in his duties as a fiduciary, either by acting for his personal advantage to the detriment of another beneficiary or by acting in any manner occasioning damage to the estate, he will be subject to surcharge and removal from office. At this point in the estate administration he neither will be enjoined nor removed from office in anticipation of possible wrongdoing in this regard.
Insofar as a conflict of interest may have existed in the operation of the corporation by reason of the division of the stock ownership between the estate and the surviving spouse, that was a situation created by the testatrix’ will and is not a basis for removal of the executor. (Matter of Foss, 282 App. Div. 509; Matter of Sherman, 9 Misc 2d 731). The contention of the executor in this regard that the standards governing the fiduciary acts of a trustee are without application to the conduct of an executor is wholly without merit and might be regarded as indicative of the fact that the executor is not fully aware of the nature of the obligations assumed by him upon taking office.
The executor paid from corporate funds certain promissory notes made by the corporation to the order of the testatrix and, after his father had acquired ownership of all of the corporate stock, the executor presented the same notes along with others to a bank for collection. While this conduct resulted in no injury either to the estate or to the corporation, the executor has provided no explanation of this procedure and it must be *777 assumed that he did this either through indifference or for the purpose of harassing his parent. There are further charges that the executor paid himself an excessive salary as president of the corporation and these charges are made both as a ground for the executor’s removal and as an objection to the allowance of commissions to him. The fact is that, upon acquiring the testatrix’ one-half interest in the realty corporation, the executor ousted his father as president of the corporation and had himself elected to that office. This resulted in litigation in the Supreme Court in which the executor was successful in maintaining his position. Thereupon the executor paid himself from the corporation a salary in the same amount as his father had been receiving. Concededly, the father whose money was invested in the corporation, devoted his full time to the management and operation of the real estate while the executor, who acquired the presidency because of his fiduciary position, was gainfully employed as a lawyer and was able to devote only evenings and week ends to the affairs of the corporation. A salary fixed by an owner shareholder is not necessarily a criterion as to the value of the required services, particularly when the salaried position is assumed by the fiduciary who also is to receive commissions for his services. This court lacks authority to interfere with the affairs of a corporation in which an estate does not have a controlling interest but the court does have jurisdiction of fiduciaries which it places in office. There was delay in the administration of this estate and a consequent continuance of this salary payment during the period of delay. The court regards compensation at the rate of $3,900 a year as adequate for the services rendered in the management of the corporate affairs during the period the executor acted as president of the corporation and the executor will be surcharged for the amount which he paid himself in excess of such allowed salary. The excess is to be paid to the corporation, which is a party to this proceeding.
The attorneys for the executor are granted a legal fee in the amount of $10,000. The claim for services allegedly rendered to the estate by an accountant is disallowed. Any accounting services, beyond those normally required of an executor, were either rendered to the executor to protect his personal interests or were rendered to the realty corporation. Objections Fourth and Fifth are disposed of by the foregoing rulings as to fees. Objections First, Second and Third are dismissed for the reasons stated in this opinion. Commissions of the executor will be allowed at the statutory rates, against which the surcharge may be offset and further ruling on objection Sixth is not required.
*778 The court is of the impression that the executor has acted arbitrarily and without full consideration of the interests of his father as a beneficiary of this estate, that he has unduly complicated the administration of the estate and has not performed the duties of his office with expedition. It is most unfortunate that the death of one party to a marriage, which seems to have been successful in every external aspect, should result in this conflict between the surviving spouse and the sole issue of the union and, if ever there existed occasion for adverse parties to resolve their differences by mutual agreement, it was here. The court is not desirous of removing from office the only child of the testatrix whom she selected as the executor of her will and, although recognizing that the executor exposed himself to criticism which could have been avoided, denies the application to revoke letters testamentary.