S. Samuel DiFalco, S.
This is a contested proceeding for ancillary letters of administration c. t. a. The decedent, a citizen and domiciliary of Greece, died early in 1967. His will was duly established before the court in Athens. The will appoints three executors. It disposes of substantial property in Greece and also of cash and securities on deposit with Chemical Bank New York Trust Company and cash deposited with a Massachusetts bank. The value of the property in New York is estimated to be nearly $600,000.
The petitioners for ancillary letters of administration c.t.a. are two legatees, who reside in the State of New York, each of whom is to receive $50,000 out of the assets located here. The respondent and cross petitioner is a New York attorney who has been designated by the executors in the domiciliary jurisdiction to receive ancillary letters of administration c.t.a., and he contends that he is entitled to ancillary letters of administration c.t.a. in priority to all other persons.
In view of the course of the argument herein, it should be made clear at the outset that the appointment in New York of an ancillary representative to administer property located in New York is governed solely by the law of New York. Our statute states explicitly those entitled to ancillary letters on a foreign will and it prescribes the order of priority which this court must follow in granting such letters (SCPA 1604). The will of this testator does not appoint a separate executor for New York property, and hence we pass from paragraph (a) of subdivision 1 of section 1604 to paragraph (b), that is, “ the person to whom domiciliary letters have been issued or if domiciliary letters are not issued, the person appointed in the will to administer all property wherever located.” Next in order of priority (par. [c]) is the 1 ‘ person acting in the domiciliary jurisdiction to administer and distribute the testator’s estate.” Section 1608 expressly authorizes a person who is acting in the domicile “ as executor * * * or to administer the decedent’s estate in accordance with the law thereof ” to designate an eligible person to be appointed ancillary representative in New York, and in that case the designee stands in the same order of priority as the one who duly designated him. The petitioners herein come last in the order of priority, namely, as legatees who would be entitled to letters of administration c. t. a. under section 1418. To succeed, they must establish that the persons named in the will as executors are not persons 1 ‘ to whom domiciliary letters have been issued ”, nor persons “ appointed in the will to administer all property wherever located ”, nor per *979 sons ‘ ‘ acting in the domiciliary jurisdiction to administer and distribute the testator’s estate.”
The purpose and intent of the Legislature in framing the text of section 1604 are plain. It has long been the policy of New York to recognize the domiciliary executor with respect to the grant of ancillary letters here. (Matter of Woodworth, 165 Misc. 770, 772 [Foley, S.]; Baldwin v. Rice, 183 N. Y. 55, 61.) Reference to an executor or to the issuance of letters testamentary is understandable in the framework of the Anglo-American system of estate administration. Other foreign countries, however, have different systems of administering the property of a decedent, and they commit to different individuals the possession of decedent’s property and the obligation to carry out decedent’s testamentary directions. Our Legislature has attempted to describe the foreign person or officer who would be the equivalent of what we term an executor or an administrator with the will annexed. Thus in section 1604, the Legislature gave prime recognition to the person named by the testator in his will to carry out the provisions of his will. If the testator chose a person to handle only New York property, he is to receive first consideration in this State. If, on the other hand, the testator did not separate his New York administration from administration elsewhere and appointed a general executor without geographical limitation, the person so named is to be preferred. It matters not what his title be at the domicile; it is sufficient if the will appoint him to administer the testator’s property without limitation.
If the will itself does not name any person to administer the testator’s estate, the expressed policy of the Legislature is to recognize the person who is acting at the domicile, in accordance with its law, to administer and distribute the estate, whatever be his title or whatever be the status that placed him in the position so to act. Thus New York gives expression to the principle, which is quite generally recognized, that unified estate administration will be the most efficient and expeditious, and that the one jurisdiction which stands the best chance of general acceptance as the focal point of administration is the domicile of the testator. (Atkinson, The Uniform Ancillary Administration and Probate Acts, 67 Harv. L. Rev. 619 and 624-625; Uniform Ancillary Administration of Estates Act, Commissioners; Prefatory Note, 9 Uniform Laws Ann., p. 58; Foreign Estates, 34 Brooklyn L. Rev. 442, 445.)
It appears to be conceded that letters testamentary are not issued under the law and practice of Q-reece. The cross peti *980 tioner has submitted a copy of a document issued by the court of first instance in Athens which certifies that the three named executors appeared in court and declared their acceptance of “ appointment as executors of the will of the deceased Anasthasius Gyfteas, son of Evangelos, made by virtue of his holograph wifi dated April 12, 1963 ”. They therefore appear to have the status of qualified executors. (The will of this testator is, of .course, in the Greek language and we are using an English translation of the Greek text, but all parties and all experts have translated the Greek term as “ executor ”.) The petitioners, however, contend that under the law of Greece executors have no authority to possess and administer the property of the testator but act merely as “ a referee among the legatees ”. They contend that under the law of Greece the general or residuary legatees have the right to sue for, collect, and recover their legacies and that executors have no right to interfere with their recovery of the money bequeathed to them and that executors have no right to administer the funds located here.
Although the right of appointment as ancillary executor is governed by New York law, we must look to the law of Greece to determine whether the persons named as executors have the authority which is described in SCPA 1604 in respect of qualification for ancillary letters. Several affidavits of foreign law have been submitted to the court by the contending parties.
It is elementary that foreign law is a question of fact, and that when adverse parties allege conflicting principles of foreign law, a hearing is required so that the court may observe the witnesses and each party may cross-examine his adversary’s witness. Here the arguments on foreign law are based upon the affidavits of the respective experts. It is true that the affidavits are the basis for conflicting arguments. The respective experts on the law of Greece appear to be well qualified and to be fair in their exposition of the law. The differences between the experts on either side are really differences of emphasis rather than differences of opinion. The experts appear to be in complete accord with respect to the fundamental and essential matters. The question is whether the three persons named by the testator as his executors have the authority to receive, hold and distribute property of the testator, particularly the property in the State of New York. On the foreign law which is relevant to this central issue, there is no difference of opinion at all.
We must first look at the will of this testator. The testator disposed of specific, real and personal property located in *981 Greece, and he gave many legacies expressed in terms of Greek currency. After the large number of legacies and devises which dispose of his estate in Greece, the testator referred to his property in the United States, consisting of assets deposited with specified banks. The will estimated the value of this property to be slightly in excess of $400,000. The greater part of it consists of securities deposited in a bank in this county, and the present value of his American assets now is estimated to exceed $600,000. The will directed payment of pecuniary legacies aggregating $170,000, and then reads: “ The balance, amounting to about Two Hundred Thirty Thousand ($230,000.00) Dollars, I give unto the County of Eleusis, of Attica, for the building of a High School together with a Childrens’ Shelter and I also oblige the County of Eleusis to give from the aforesaid amount Ten Thousand ($10,000.00) Dollars for the completion of the Church of the Holy Apostles of Eleusis. After the building of the said High School and of the Childrens’ Shelter and the giving of the Ten Thousand ($10,000.00) Dollars for the assistance of the said Holy Church of the Apostles, any possible balance should be used in the discretion of the Municipal Council of Eleusis for the granting of dowers to orphan girls.”
The affidavit of foreign law submitted by the cross petitioner (affidavit of P. John Kozyris) states that under Greek law the executor is the only person entitled to possession, management and distribution of the assets of the testator where the will includes a charitable bequest. A charitable bequest is defined to include all philanthropic, religious, charitable or other purposes beneficial to the public. When the charitable bequest comprises specific identifiable articles of property, the powers of the executors are correspondingly limited. When there are no charitable legacies at all, the powers of an executor are subordinated to those of legatees. In a will which contains a legacy to charity, the executor is obliged, with the approval of the Minister of Finance of Greece, to turn over to the universal legatees the assets which are not needed to carry out the charitable purposes. The administration of the property bequeathed to charity is carried on under the supervision of the Ministry of Finance. The executor has the power to manage the property, may sell or lease the assets, may pay or settle debts that are charged against the property, may sue and be sued.
The opposing affidavit submitted by the petitioners’ expert (Athenasius T. Iatrou) takes issue with the respondent’s expert with respect to whether or not a legatee has a right to take possession of his legacy without the intervention of an executor. The fundamental question, however, is not whether the general
*982 legatees have the right to take possession of their own legacies under the law of Greece, but rather who has the right to administer the entire body of this property. On this point the petitioners’ expert is not in disagreement with the respondent’s expert. He agrees that insofar “ as part of the provisions of a will refer to charitable bequests, the same shall toe regulated toy Law No. 2039-1939.” (Affidavit, Aug. 29, 1968, No. 4-a.) In the same affidavit the expert refers to what he says is the only treatise on the subject of legacies and gifts for charitable purposes, and quotes it as follows: '‘ The executor has the right to liquidate the estate. He has also administrative powers, which must be understood according to the nature and meaning of the task of the executor, limited to that part of the estate which has been set aside for the charitable purposes, unless by the nature of the case, it is necessary that the executor assume the liquidation of the entire estate.” The expert expresses the opinion that in only one instance does the power of the executor extend to the entire estate and that is where there is “ a co-ownership of certain assets undividedly, e.g. where the testator bequeathes an estate to two or more persons undividedly, one or more of whom is a charity. In such a case, the executor may administer the whole asset, may sell it and divide the proceeds in accordance with the provisions of the sale.” The same expert submitted another affidavit (Aug. 5, 1968) in which, after expressing the opinion that legatees have the right to take their legacies without the intervention of a third person, he says: “ There is only one exception to the above observations and that is under law 2039-1939, a Greek executor, may, by reason of his position, in certain limited matters, has broader functions and powers than the ones provided by the Civil Code. This refers to executors named in a will which includes provisions for charitable purposes. In such cases the functions of the executor are regulated primarily by the provisions in the will, secondarily by the law 2039-1939 and supplementarily by the provision of the Civil Code. Under this Law, the executor is vested with the attributes of a public officer and his powers are determined by the will. If the testator has not excluded the executor from liquidating and distributing the estate, in such an event the executor has the function of administering (liquidating-distributing) (Art. 63-1 of Law 2039-1939.)”
The matters on which the respective experts differ are matters which are not relevant to the present application. Thus it is of no consequence here whether the legacies in the present will are such as to justify the executors in administering all of the prop *983 erty in Greece or are such as to restrict them only to the charitable legacy. New York law does not permit every legatee to sue a third party to collect the amounts of their respective legacies. Our practice requires the appointment of an administrator to take possession of all of the property, to pay debts and expenses and to distribute the balance to the legatees. It is sufficient for our purposes that under the law of Greece the executors have the power and duty to administer the charitable legacy. They are thus the persons who are to administer the remaining balance of the property located here, and they therefore are the persons empowered to administer and make distribution as required by SCPA 1604. Even if the case were one where the appointment would be referred by SCPA 1604 to SCPA 1418 (which regulates the general grant of letters of administration c. t. a.), the executors, as the persons entitled to take the charitable legacy of the residue, would be preferred over those who take only general legacies.
Nor is it of any significance here whether the law of Greece expressly or impliedly authorizes Greek executors to apply in other jurisdictions for ancillary letters. The right to apply for ancillary letters in New York is governed by article 16 of the SCPA and the right of a person entitled to letters to designate another to receive them in his place is expressly granted by New York law.
Thus it is undisputed that executors under the law of Greece have the right to take and administer a legacy for -charitable purposes. It is patent that this will gives the residue of the American property — and by far the largest part of the American property— to charitable uses and purposes. The court, therefore, holds that the executors are the persons entitled to ancillary letters under the foreign will under SCPA 1604 and that they are empowered as persons “ acting in the decedent’s domicile * * # to administer the decedent’s estate in accordance with the law thereof ”, to designate an eligible person to receive ancillary letters of administration c. t. a. (SCPA 1608.) Ancillary letters will accordingly be granted to the respondent.
The petitioners express concern lest the property be sent to Greece before payment of their legacies or that it would be otherwise disposed -of. The ancillary administrator c. t. a. will be prohibited from transmitting any assets to the domicile without the further order of the court, on notice to the legatees.