Ellsworth N. Lawrence, S.
The question presented here is whether or not letters testamentary in the estate of Martha M. Badore should be granted to Robert O. Newell. He was nominated as executor in Mrs. Badore’s will, which was admitted to probate in this court on March 12, 1973.
This matter first came before me on February 13,1973, on the return day of a proceeding to compel Newell to file the will for probate. That proceeding was instituted by Mildred Badore Manley and Marion Badore Murphy, daughters of the decedent, they being the only distributees.
The will having been produced by Newell on February 13, 1973, Mrs. Manley and Mrs. Murphy, although consenting to probate, immediately filed objections to the granting of letters testamentary to Newell (SCPA 709).
These objections were that Newell should not be executor for three reasons:
(1) That although Newell had admitted to them that he had signed and delivered to the decedent promissory notes of at least *472 $40,000, that he had claimed that he was not legally obligated to the decedent for any money at the date of her death and that he had refused (since her death) to discuss the matter further with them.
(2) That the will was in the possession and/or control of Newell at the date of decedent’s death; that he knew the terms of the will and knew that he was executor, but that he had made no effort to present the will for probate and that they had had to petition to compel the production of the will.
(3) That the only assets of the estate were (a) the money owed by Newell and (b) real property occupied by Newell and operated by him as a liquor store and that they did not know about the lease or its provisions.
The conclusions of the objectants were that it would be improvident and would not afford adequate security to the objectants for letters to be issued to Newell. These objections having been filed on February 13, 1973, counsel for the parties agreed to proceed with the probate of the will and further agreed that a hearing should be had on the objections following probate.
In the meantime, counsel having also agreed thereto, a copy of the lease to the liquor store was furnished by Newell to Mrs. Manley and Mrs. Murphy through counsel.
The will having been probated on March 12, 1973, a hearing was had on the objections on that day. At the close of the evidence, the respondent moved to dismiss the objections.
At the start of the hearing, I took judicial notice of the will and its contents. From this it appears:
(1) That Mrs. Badore executed the will on June 7, 1972 at Malone.
(2) That the will nominated Newell to be executor if he survived her, with Mr. Poissant to be alternate executor if Newell did not survive.
(3) That there should be perpetual care of the cemetery lot. Parenthetically I should state, here that the parties have already made arrangements for such care, so that there will be no problem hereafter in that regard.
(4) The only other provisions of the will are that Mrs. Manley and Mrs. Murphy are residuary legatees, so that they will inherit all the rest of the net estate.
At the hearing on the objections, the only witnesses were Mrs. Manley and Mrs. Murphy.
From the testimony it appears that Mrs. Badore died in early November, 1972.
The only other asset of the estate, except those already mentioned, is a small parcel of real property, without buildings, *473 located between the hamlets of Owl’s Head and Mountain View in this county.
The liquor store is owned by the decedent. It is occupied under a written lease from decedent to Newell. It is located at 267 E. Main St., Malone. No evidence was submitted as to the terms of the lease, nor was it produced in court.
We take up first the delay in probating the will.
Shortly after decedent’s death, the will was read to the residuary legatees at the office of Poissant and Twiss. They did not know before that time that Newell had been named as executor.
From time to time thereafter and after Mrs. Murphy had consulted Henry A. Fischer, Esq., the residuary legatees had a series of conversations with Newell regarding the probate of the will.
The first of such conversations took place at the liquor store shortly after Christmas Day. At that time all parties were aware of the terms of the will and that Newell was named as executor therein.
The residuary legatees then told Newell that the will should be probated. He told them then that as they had an attorney, they should be the ones to take care of the probate.
In subsequent conversations between Newell and the residuary legatees, these having taken place at Mrs. Murphy’s home, they again told him (more than once) that the will should be probated. He told them that as they had their own lawyer, they should take care of probate.
In one of those conversations, he told them that he was not going to probate the will himself.
It was only about the time that the will was produced for" filing in response to the court order that Newell told them that he was going to probate it.
Newell should have. filed or caused the will to be filed in Surrogate’s Court within a short time after Mrs. Badore’s death. No one has the right to retain possession of a decedent’s will to the exclusion of any other persons interested in offering the will for probate. (Matter of French, 202 Misc. 735; Matter of Reiss, 200 Misc. 697.) Such procedure not only accords with the policy of the Staté but obviates the necessity of a proceeding (as here) to compel the production of the will for filing (SCPA 1401). It enables any interested party (see SCPA 1402) to propound the will. It also eliminates any question (not, of course, present here) of possible concealment of the will (Penal Law, § 190.30). It also avoids the possibility of loss of the instrument.
*474 The suggestion made by Newell to the residuary legatees that they should “ take care ” of probate as they had an attorney was. made, I find, in good faith but that suggestion did not meet the-full measure of his responsibility to cause the will tb be filed in court. He should have instructed his attorneys to file it.
Newell may thus be criticized for failing to file the will in January after the conversation with the residuary legatees at the liquor store.
He may also be criticized for failure to petition for probate soon after that time, irrespective of whether he intended to qualify as executor or to renounce and irrespective of any other considerations such as what attorneys would be retained.
■ Although Newell as the nominated executor by failing to pro¿ . ceed with expedition in the probate has thus exposed himself to criticism which could have been avoided, I do not find that to be a proper ground for the denial of letters testamentary to him (cf. Matter of Weiss, 33 Misc 2d 773).
The fact that Newell operates a liquor store on premises leased to him by the decedent is not, in my view, a reason for declining to appoint him as executor. While differences may arise between Newell as tenant and the estate as to the respective rights and obligations under the lease, such would seem to be of minor concern as no present problem exists in regard thereto.
As to this aspect of the matter we should follow the general rule that the solemn selection of Newell by the testatrix is not lightly to be disregarded (Matter of Woodworth, 165 Misc. 770, affd. 254 App. Div. 852) particularly where the relation of landlord and tenant existed between Mrs. Badore and Newell before her death (Matter of Tysen, 245 App. Div. 845; cf. Matter of Weiss, supra). Such a conflict of interest between the executor and the estate'is not in and of itself a sufficient cause to justify denial of letters testamentary to Newell (cf. Matter of Kent, 22 Misc 2d 66).
But we must keep in mind at this point that each case of conflict of interest stands on its own facts. (Cf. Matter of Israel, 64 Misc 2d 1035.)
We turn now to the chief ground of the objections by the residuary legatees to the granting of letters testamentary to Newell. This involves the note of $40,000 dated January 2,1969. Although the note was not produced in court as an exhibit, I am satisfied from the proof that it is a demand note for that amount dated that day and that it was signed by Newell and delivered; by ■hjin to the deeedent.
*475 The evidence taken at this hearing clearly indicates* however, that at all times since the death of the decedent, Newell has claimed that the note was not valid.
The question of whether or not the note is a legal obligation against Newell need not be resolved at this time. For our present purposes it is sufficient to say that Newell and the residuary legatees have taken and will apparently continue to take different positions regarding it.
Nor is it really important to concern ourselves with the question of whether or not the note was executed as Newell was about to enter a hospital from which he might expect not. to return or whether or not it was his intention then to protect Mrs. Badore or his estate from possible claims by another woman or whether or not he then wanted Mrs. Badore to have what he had, or whether or not there was some tax purpose intended.
The point is that whoever is charged with the trust responsibility of administering this estate must contemplate the strong probability of bringing a legal action on behalf of the estate against Newell. Such an action would presumably be brought in Supreme Court, Franklin County, the parties residing here.
Although it seems less likely from what presently appears, it may be that legal action against Newell will not be necessary, whether for one reason or another.
The point still remains that whether one course of conduct or another is taken, the determination of what to do should be made by a person having only the interest of the estate at heart:
Implied in the argument of the residuary legatees is the consideration that, if Newell were to be appointed executor,. the present issue regarding the $40,000 note could remain unresolved until judicial settlement, not only delaying a determination of the matter but producing a situation where Newell as executor might attempt to waive the Dead Man’s Statute (CPLB 4519).
Thus the residuary legatees argue that this is no ordinary case of conflict of interest, that the conflict of interest here is present and real, not anticipated or speculative.
This court firmly believes that the solemn selection by the testatrix of a named executor is not lightly to be disregarded, that the court should not thwart the decedent’s election, and that no restriction should be placed on the choice of an eligible person (cf. Matter of Woodworth, 165 Misc. 770, affd. 254 App. Div. 852, supra; Matter of Israel, 64 Misc 2d 1035, supra).
But there are certainly situations where a named executor is in such a position of divided loyalty that we should pause to reflect on his eligibility to receive letters. This, in final analysis, *476 is what hearings on objections to the grant of letters are for. (SOPA 709.)
If a line of demarcation is to be found in the cases, the test may very well be akin to that set forth by Judge Bennett in the Israel case (Matter of Israel, supra, p. 1043): that a fiduciary might be removed where a conflict of interest motivates that fiduciary to seek personal advantage and gain at the expense and to the detriment of -the estate. The question here may well be whether Mr. Newell is not in such a position of divided loyalty with reference to the $40,000 note, concededly representing a very substantial asset of this estate, if it is an asset. Is this an “ intolerable ” conflict?
To quote from Judge Bennett’s opinion in Israel (supra, p. 1040), “ It is well settled that a debt or obligation due from an executor is already deemed an asset in his hands [citing EPTL 13-1.2 and cases] and -this is so.even as to an unacknowledged debt (Hodge v. Hodge, 90 Me. 505), or one that is unmatured (Matter of Burdick, 79 Misc. 167, mod. on other grounds 161 App. Div. 907, affd. 212 N. Y. 553).”
On that rationale, the $40,000 note is an asset of the estate due from Newell, even though unacknowledged by him.
Thus where he doubts the validity of the note even before probate, the conflict of interest is not speculative. It exists right now. It will not go away until it is resolved.
If Newell had acknowledged the validity of the note, even if he claimed that partial payment, for example, had been made, I should not regard the conflict of interest as intolerable here.
This situation is far different from that produced by the landlord-tenant relationship. There the testatrix may well be charged with the knowledge of the existing situation and be héld responsible in selecting Newell with the knowledge that problems might arise as to the leasehold interests.
But here, for all that appears from the evidence, the testatrix had possession of the note from its execution until May, 1972, when, according to Mrs. Murphy’s testimony, she gave. (i.e. delivered) it to Mrs. Murphy.
It seems only logical to conclude that Mrs. Badore regarded the note as a legal obligation created by Newell and that in naming him -as her executor, .she felt that he would meet the obligation for the benefit of the residuary legatees.
There must be an inherent responsibility in a Surrogate in such a case to deny letters testamentary to a nam^d executor.
Accordingly I do so.
*477 So far as the Surrogate’s Court Procedure Act is concerned, I determine that Mr. Newell is ineligible to receive letters upon the ground of “ improvidence ” under clause (e) of subdivision 1 of SCPA 707, being aware that “ improvidence ” has been defined in Matter of Ferguson (41 Misc. 465) as being that which would be likely to render the estate unsafe and liable to be lost or diminished.