Matter of Ryan (2025 NY Slip Op 25016)

[*1]

Matter of Ryan

2025 NY Slip Op 25016

Decided on January 24, 2025

Surrogate's Court, Monroe County

Ciaccio, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 24, 2025
Surrogate's Court, Monroe County

Matter of the Estate of Niss Ryan, deceased On an Application for Letters Testamentary.

File No. 2024-2421

Kevin S. Cooman, Esq. and Dan S. Williford, Esq., McConville Considine Cooman & Morin PC, Rochester, New York, Attorneys for Susan Houde-Walter, Petitioner. 
Eric D. Spoth, Esq., Spoth Law Office, Fairport, New York, Attorney for Barbara Pilcher, Respondent/Nominated Executor.

Christopher S. Ciaccio, S.

BACKGROUND
This is a proceeding pursuant to Surrogate Court Procedure Act §707(1)(d) to determine whether a nominated executor, Barbara L. Pilcher ("Barbara"), the decedent's stepdaughter, is not eligible to serve on the grounds of "improvidence" and/or "unfit for the execution of the office."
A hearing was requested [FN1]
by the decedent's daughter Susan Houde-Walter ("Susan"), who filed a competing petition for letters of administration cta.
The hearing was held on January 21, 2025.
Counsel for Susan (the party objecting to the nomination of the executor) called three witnesses: the nominated executor Barbara Pilcher, Susan, and the attorney who filed the probate petition, Dan Williford.
Counsel for Barbara Pilcher called one witness, Barbara. 
What follows are the court's Findings of Fact and Conclusions of Law based upon the evidence and testimony it finds credible and accurate.
[*2]FINDINGS OF FACT
Niss Ryan died on April 4, 2023. She was survived by two children of her first marriage, Susan Houde-Walter and Peter Houde. Barbara Pilcher is the daughter of Niss's second husband, John Ryan.
Niss Ryan's husband John died in 2011, and thereafter Susan Houde-Walter assisted her mother in managing her finance and ensuring expenses were paid, such as the expense for caretakers in Mexico. Susan was power of attorney for Niss.
In 2016, Niss retained attorney Andrew Dutcher [FN2]
to draft her Last Will and Testament. It named Barbara as executor, of which Susan was aware. At the time Susan was occupied with the care of her husband, who was ill. Barbara was with Niss when the Will was drafted.
The Will provided for the residuary estate to be divided in three equal shares, one each to Niss's two children of her first marriage and one share to her stepdaughter Barbara.
Paragraph "SIXTH" of the Will provides as follows:
SIXTH: I direct that any shares of Laser Max owned by me at the time of my death and my interest in my condo in Puerta Vallarta, Mexico shall be transferred to my residuary beneficiaries in the percentages shown in Paragraph Fourth.
In or about 2016 Niss, with Susan's assistance, rented a bungalow at a senior living facility owned by St John's and kept much of her personal property there. She would spend six months in Mexico and then return, but from 2019 on she did not return to Rochester. Niss gave up the St. John's bungalow in 2023, and Susan arranged to divide the personal property stored there among her, her brother and Barbara.
At the time of her death Niss owned not one but two condominiums in Puerto Vallarta, Mexico.
After Niss died, Susan made the funeral arrangements, took custody of the ashes, paid the caretaker Isabella, and put her mother's personal property that had not been distributed into storage. She has paid the storage fees from her own funds since July 2022.
Upon Niss's passing, Barbara consulted with attorney Andrew Dutcher. She did not file for letters testamentary, although she was aware that she was the nominated executor under Niss's Will. There were two accounts in Niss's name that required administration and distribution and that would pass to legates pursuant to the residuary clause in the Will, one being an investment account and the other a checking account.
Rather than applying for letters, Barbara arranged for the sale of the two condominiums in Puerto Vallarta. She retained Mexican counsel. She believed she was entitled to the proceeds of the sale, notwithstanding paragraph "SIXTH" of the Will, based on her understanding of "Mexican law" and a Spanish-language trust agreement dating back to 1989 (a copy of which was not produced).[FN3]

The condominiums were sold, and the net proceeds were approximately $268,000.00. Barbara kept the proceeds in her own bank account.
In December 2023 Susan retained attorney Dan Williford, an experienced estate attorney.
In May 2024 attorney Dutcher informed Barbara that he would not represent her in the probate of the Will and administration of the estate. She then retained attorney Eric Spoth. 
In 2024 attorney Williford prepared to file for his client Susan to be appointed administrator cta, given that over a year had passed without any action having been taken by Barbara on behalf of the estate. He exchanged emails with counsel for Barbara, Eric Spoth, concerning whether, since Barbara had never filed to be appointed executor, Barbara would sign a waiver of service of process and consent to Susan's appointment. Spoth responded that she would only if Susan would agree that the proceeds of the sale of the two Mexican condominiums belonged to her.
No agreement was reached, and on September 16, 2024, Susan filed to be appointed administrator cta. She also filed a petition to compel production of the Will.
Barbara then filed, on October 28, 2024, her petition to probate the Will and be appointed executor.
CONCLUSIONS OF LAW
It is well-settled — indeed, it is far more definite than well-settled, if there is such a standard — that the burden is exceedingly high on one who seeks to deny letters testamentary to one nominated as an executor. As Justice Andrews of the New York Court of Appeals (he famously of the dissent in Palsgraf v Long Is. R.R. Co., 248 NY 339 [1928]) wrote:
"The power of the surrogate to refuse letters is limited by statute. If qualified one named as executor is entitled to the issuance of letters . . . 'The testator . . . enjoys the right to determine who is most suitable among those legally qualified to settle his affairs and execute his will, and his solemn selection is not lightly to be disregarded' " (Matter of Flood, 236 NY 408, 410 [1923], quoting Matter of Leland, 219 NY 387, 392 [1916]; see also Matter of Russo, 100 AD3d 1547, 1548-49 [4th Dept 2012] ["It is well established that 'a decedent's choice of executor should be given great deference . . . ' "], quoting Matter of Palma, 40 AD3d 1157, 1158 [3d Dept 2007]).
Also, "[a] nominated executor's character failings may be offensive to others, but unless they, in the aggregate, clearly demonstrate unworthiness for the responsibilities to be undertaken, they cannot bar the appointment" (Matter of Gottlieb, 75 AD3d 99, 107 [1st Dept 2010]).
Here Susan seeks to disqualify Barbara, as articulated during closing arguments, as "one who does not possess the qualifications required of a fiduciary by reason of . . . improvidence . . . or who is otherwise unfit for the execution of the office" (Surrogate Court Procedure Act § 707 [1] [d]).
The alleged "improvidence" and "unfit (ness)" consists of 1) failing to petition to probate the Will for nearly 18 months after Niss passed away and apparently only after Susan filed her petition; and in the course of which left two accounts containing hundreds of thousands of [*3]dollars sitting idle; and 2) keeping the proceeds of the sale of the two condominiums in contravention of specific language in the Will that directed that the proceeds be distributed according to the residuary clause, i.e., equally among the three.
What constitutes "improvidence?" 
Warren's Heaton on Surrogate's Court Practice, in its review of the (many and mostly very old) cases that define the term, summarizes by stating that "Improvidence such as to exclude a party from administration is a want of ordinary care and foresight in the acquisition and preservation of property" (2 Warren's Heaton on Surrogate's Court Practice § 33.02 [6] [c] [2024]).
Also, "there must exist such a condition of irresponsibility which so pervades the moral fiber of the individual, so as to render him generally, and under all ordinary circumstances, unfit to act in a fiduciary capacity" (Matter of Murdoch, 22 Misc 2d 168, 169 [Sur Ct, Richmond County 1960], citing Matter of Flood, 236 NY 408, 410, 411 [1923]).
There is scant caselaw dealing with delays in filing for probate as constituting improvidence. In Matter of Badore (73 Misc 2d 471 [Sur Ct, Franklin County 1973]) the nominated executor failed to file a petition to probate the Will, or even provide a copy to interested parties, for over three months, despite being reminded to do so many times by the residuary legatees and did not do so until a petition was brought to compel delivery of the Will.
The court wrote that "Newell [the nominated executor] should have filed or caused the will to be filed in Surrogate's Court within a short time after Mrs. Badore's death," but concluded that the delay, while exposing him to criticism, was not a "proper ground" for the denial of letters (Matter of Badore at 473-474).
Here, however, the delay is nearly 18 months, not three, and during that 18 months hundreds of thousands of dollars were not being distributed but rather sitting in accounts.[FN4]
No credible reason was given for delaying the probate of the Will let alone the distribution of a substantial amount of funds to the residuary beneficiaries. And Barbara only filed a petition to probate the Will after Susan had filed petitions for letters of administration cta and to compel production of the Will. On these facts alone the court finds that Barbra is improvident and ineligible to administer the estate, having demonstrated "a want of ordinary care and foresight in the acquisition and preservation of property." (2 Warren's Heaton on Surrogate's Court Practice § 33.02 [6] [c] [2024]).
As if that is not enough, however, she also is seriously conflicted.
While it has been held that "[a] potential conflict of interest on the part of a fiduciary, without actual misconduct, is not sufficient to render the fiduciary unfit to serve" (Matter of Russo, 100 AD3d 1547, 1548-1549 [4th Dept 2012], quoting Matter of Palma, 40 AD3d 1157, 1158 [3d Dept 2007]), here actual misconduct has occurred. Besides not probating the Will and making distributions in a timely manner, Barbara sold two properties in Mexico, one of which was specifically referenced in the Will, and she then kept the proceeds in her belief that she is [*4]entitled to them based upon an alleged Spanish-language "trust document" that was never produced. 
Again, referring to Matter of Badore a conflict of interest provided the basis to deny letters to Newell, the nominated executor in. Newell had borrowed $40,00.00 from the decedent and yet failed to acknowledge it. The court then denied letters, "upon the ground of 'improvidence,' " finding that his actions met the definition of "improvidence" as being "that which would be likely to render the estate unsafe and liable to be lost or diminished" (Matter of Badore at 477, citing Matter of Ferguson, 41 Misc 465 [Sur Ct, Kings County 1903]).
Barbara is similarly conflicted. She seeks to administer the estate but has openly rejected the authority of an explicit provision in the Will that directs the proceeds of the sale of (at least) one of the Mexican condominiums to be distributed to the residuary beneficiaries. Her claim of ownership rests on an unproduced and nearly illusory existence of a trust agreement.
Thus, the conflict considered in conjunction with the delay in probating the Will constitutes improvidence, thus rendering Barbara ineligible to administer the estate. She claims an absolute right to the proceeds of the Mexican properties, and although it is not her burden to establish that she does not suffer from improvidence, if she was going to provide a rationale for ignoring the language of the Will, it would have helped her rebut the allegation of improvidence if she produced a copy of the Spanish language "trust" agreement.
A dark cloud of doubt and suspicion hangs over Barbara's actions with regard to this estate, one that allows the court to conclude that allowing her to administer the estate would "render the estate unsafe and liable to be lost or diminished."
Even if her actions do not fit the definitions of "improvidence," they would fall within the more generalized catch-all provision of "unfit for the execution of the office." As recounted in Warren's Heaton on Surrogate's Court Practice, this provision "was added by 1993 New York Laws, Chapter 514, on the recommendation of the EPTL-SCPA Legislative Advisory Committee, which explained the provision as expanding the grounds upon which denial of letters could be based" (2 Warren's Heaton on Surrogate's Court Practice § 33.02 [6] [e] [2024]). The bill jacket also explained that it made the grounds for ineligibility more "modern."
The court in In re Piterniak (NYLJ, Oct. 10, 2003 at 26 [Sur Ct, Suffolk County]) noted that the "unfitness" under the statute is "purposefully broad" (as quoted in 2 Warren's Heaton on Surrogate's Court Practice § 33.02 [6] [e] [2024]).
In the "modern" view, then, Barbara's actions, again seen as a whole, render her unfit to be the administrator of the Estate. The court has no guarantee that the administration would take place with the required alacrity upon her appointment, since she did nothing for nearly 18 months to distribute the more than $300,000 that without question was to be distributed to the beneficiaries. She has not made available the "trust" agreement that she says entitled her to the proceeds of the Mexican properties, and she has set up the estate for a costly turnover proceeding to claw back those proceeds. She has exposed the estate to substantial liability for estate income taxes, interest and penalties.
Finally, her explanation for failing to probate the will, that it was on the advice of counsel, is deemed not only not credible, but is ridiculously flimsy and an obvious evasion of responsibility. The court takes it as further evidence of her unfitness to administer this estate. If she had said, for instance, that she was preoccupied with other pressing concerns, or had been relying on attorney Dutcher to file the papers, it would have been more helpful to defeating the claim that she is ineligible than asserting Dutcher told her to sell the property first. It is [*5]significant that Dutcher was not called as a witness, and the application of the standard "Missing Witness" charge (see People v Smith, 33 NY3d 454 [2019]) to determining the outcome seems appropriate here.
Accordingly, the petition for letters cta to issue to Susan Houde-Walter is GRANTED.
The petition for letters testamentary to issue to Barbara Pilcher is DENIED.
Counsel for Susan Houde-Walter shall file a proposed Order.
Dated: January 24, 2025
Rochester, New York
Hon. Christopher S. Ciaccio
Surrogate's Court Judge

Footnotes

Footnote 1:Neither party filed objections to the other's petition, which, to properly join issue and obtain a hearing, should have been done. But as so often happens in surrogate court practice, especially with smaller estates (although this one potentially exceeds $500,000.00 — not really that small) or with attorneys not familiar with the very different procedures of the Surrogate's Court Procedure Act, hearings are requested and motions to dismiss are made without observation of the procedural norms. The hearing here went forward, on the consent of both parties.

Footnote 2:The court takes judicial notice that attorney Dutcher is an experienced and highly regarded estate attorney.

Footnote 3:Barbara testified that attorney Andrew Dutcher advised her to "take care" of the sale of the condominiums before probating the estate. Counsel for the petitioner objected on the ground that it was hearsay and asked that the answer be stricken, which was granted. A second time that Barbara testified regarding a conversation with Andrew Dutcher, the testimony was allowed on the ground that it was offered to show motive, i.e., to explain why she did or did not take action.
Regardless of whether the testimony is admissible (and Andrew Dutcher was not called as a witness) the court assigns zero weight to the testimony, finding it not credible. 

Footnote 4:The Standard and Poor's Index rose more than 40% in that time (see Yahoo Finance Historical Data)
Also, no mention was made of the liability the estate is going to have for taxes on the income of the estate over that period of time but given the stock market gains in the last 18 months it will be substantial and almost certainly will involve penalties and interest.